UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  | ) |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| v. | ) | Criminal No. 04-128-18 (RMC) |
| | ) | |
| **GEORGE WILSON,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**OPINION**

George Wilson has filed a *pro se* Motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his criminal convictions and sentence. The United States opposes the motion. The Court has reviewed the motion carefully and concludes it should be denied because Mr. Wilson's claims are either barred or without merit.

**I. FACTS**

George Wilson was a defendant in a multi-defendant prosecution that spanned years. An investigation of the M Street Crew by the Safe Streets Task Force, a joint effort in Washington, D.C., by the Metropolitan Police Department (MPD) and the Federal Bureau of Investigation (FBI), began in 2002 and ended on March 16, 2004, when thirty-nine individuals were arrested in the District of Columbia, Maryland, Virginia, New York, and California. In a 159-Count Superseding Indictment filed on October 19, 2005, a grand jury charged Mr. Wilson and co-defendants with narcotics conspiracy, in violation of 21 U.S.C. § 846; racketeering conspiracy, in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–68; narcotics trafficking; murder and other violent crimes; and various weapons crimes. *See* Superseding Indictment [Dkt. 386].

1

The defendants were divided into three groups for trial. The first group, consisting of Mr. Wilson, Jonathan Franklin, William Simmons, William Robinson, and Joseph Blackson, was tried by jury before this Court starting on March 6, 2006.[1] *See* Scheduling Order [Dkt. 389] at 1; March 6, 2006 Minute Entry. On May 25, 2006, the jury convicted Mr. Wilson of narcotics conspiracy (Count 1), RICO conspiracy (Count 2), and unlawful use of a communication facility to facilitate a drug trafficking offense (Counts 104, 105, and 106). *See* Verdict Form [Dkt. 552] at 41–44.

At trial, the evidence showed that Mr. Franklin was the leader of the M Street Crew, a "large-scale drug ring" that operated "an open air drug market" throughout a four-block area centered on the intersection of 18th and M Streets in Northeast Washington, D.C. *See United States v. Wilson*, 605 F.3d 985, 997 (D.C. Cir. 2010) (transcript citations and quotation marks omitted). Mr. Franklin operated with a consistent routine: he obtained bulk quantities of phencyclidine (PCP) and ecstasy pills from suppliers and repackaged the drugs for members of the Crew to sell. *Id.* at 998. Although Mr. Franklin ordinarily functioned as the Crew's leader, he was assisted in that role by his three "lieutenants," Messrs. Wilson, Robinson, and Blackson, who supplied narcotics to the Crew and resolved disputes involving money or drugs when Mr. Franklin was absent. *Id.* Essentially, their job was "to oversee everything for the top man," *i.e.*, Mr. Franklin. *Id.* (internal quotation marks omitted). Mr. Wilson, for example, "played an enforcement role, . . . defend[ing] [the Crew's] preeminence in the 18th and M area from

---

[1] Mr. Wilson was represented by Cary Clennon. Counsel filed several pre-trial motions on behalf of Mr. Wilson, which were denied. *See, e.g.*, Motion for Severance [Dkt. 296]; Motion to Suppress Statements [Dkt. 345]; Motion to Suppress Identifications [Dkt. 346]; Motion to Suppress Tangible Evidence [Dkt. 404]; Dec. 16, 2005 Order [Dkt. 448] at 21–28; Jan. 10, 2006 Minute Entry Order. Mr. Clennon also made an oral motion for severance on March 9, 2006, an oral motion for a mistrial on March 20, 2006, and an oral motion for a judgment of acquittal and a renewed oral motion for severance on May 16, 2006. These motions also were denied.

outsiders, sometimes by force." *Id.* at 999. At times, Mr. Wilson also took charge of the M Street Crew in Mr. Franklin's absence. *Id.* "Beneath Franklin's three lieutenants was a class of 'foot soldiers' who made individual sales in the 18th and M area." *Id.*

On August 17, 2006, this Court sentenced Mr. Wilson to life imprisonment on Count 1, followed by 120 months of supervised release; life imprisonment on Count 2, followed by sixty months of supervised release; and 144 months (twelve years) on Counts 104 through 106, followed by thirty-six months of supervised release. *See* Am. Judgment [Dkt. 644] at 3–4. Mr. Wilson filed a timely appeal.[2] After full arguments concerning the trial, jury verdict, and sentence, the Court of Appeals affirmed Mr. Wilson's convictions and sentence on May 25, 2010. *See Wilson*, 605 F.3d at 1039.

Mr. Wilson filed the instant motion on December 30, 2011.[3] Section 2255 Motion (Def. Mot.) [Dkt. 1181]. On February 14, 2012, the government filed a Motion to Dismiss his claims as time-barred under the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2255, which imposes a one-year statute of limitations on *habeas* petitions. *See* Mot. to Dismiss [Dkt. 1188]. The Court denied the government's motion on March 25, 2013, finding extraordinary circumstances sufficient to warrant equitable tolling. *See* Mar. 25, 2013 Order [Dkt. 1205] at 4–5. The parties then resumed briefing the merits. *See* U.S. Opp'n [Dkt. 1227]; Section 2255 Traverse (Def. Traverse) [Dkt. 1233]. On September 9, 2013,

---

[2] On appeal, Mr. Wilson was represented by Steven Kiersh. *See United States v. Wilson*, 605 F.3d 985 (D.C. Cir. 2010).

[3] The Court received and docketed Mr. Wilson's Motion on January 6, 2012. However, under the prison mailbox rule, the operative filing date is that on which petitioner placed his motion in the prison mail system to be sent to the Court. *Houston v. Lack*, 487 U.S. 266, 270–71 (1988). Since Mr. Wilson mailed his Motion on December 30, 2011, the Court deems it filed as of that date.

Mr. Wilson filed a related motion for an evidentiary hearing and appointment of counsel. *See* Mot. for Evidentiary Hearing [Dkt. 1237]. The Court now considers the pending motions.

## II. LEGAL STANDARD

A federal prisoner claiming the right to be released on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack," may move the court which imposed the sentence to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a). Because "Section 2255 is not a substitute for a direct appeal," "in order to gain relief under *any* claim, [the movant] is obliged to show a good deal more than would be sufficient on a direct appeal from his sentence." *United States v. Pollard*, 959 F.2d 1011, 1020 (D.C. Cir. 1992) (citing *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A hearing need not be held on a § 2255 motion when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *accord United States v. Morrison*, 98 F.3d 619, 625 (D.C. Cir. 1996). When the judge ruling on the § 2255 motion is the same judge who presided over the trial, as is the case here, the decision as to whether an evidentiary hearing is necessary is within the discretion of the Court. *See Morrison*, 98 F.3d at 625. "When a § 2255 motion involves ineffective assistance of counsel, a hearing is not required if the district court determines that the 'alleged deficiencies of counsel did not prejudice the defendant.'" *United States v. Weaver*, 234 F.3d 42, 46 (D.C. Cir. 2000) (quoting *United States v. Sayan*, 968 F.2d 55, 66 (D.C. Cir. 1992)) (other citation omitted).

4

## III. ANALYSIS

Mr. Wilson challenges his convictions and sentence on the following grounds: (1) ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel; (3) alleged prosecutorial misconduct; and (4) an alleged due process violation based on the Court's imposition of a three-level sentencing enhancement. *See* Def. Mot. at 4–8; Def. Traverse at 1–19.

As a threshold matter, the Court finds that no evidentiary hearing is required in this case. Having presided over Mr. Wilson's trial and sentencing, this Court is familiar with the facts and issues of the case. The parties' briefs and the record conclusively demonstrate that Mr. Wilson is not entitled to relief and that an evidentiary hearing is not warranted. The Court therefore proceeds to the merits of Mr. Wilson's claims. The Court will first address those claims that are procedurally barred, then the alleged ineffective assistance of trial counsel, and finally the alleged ineffective assistance of appellate counsel.

**A. Procedurally Barred Claims**

Mr. Wilson advances two substantive challenges to his convictions and sentence. Specifically, Mr. Wilson argues that (1) he was denied a fair trial due to the prosecutor's alleged misconduct, and (2) he suffered a due process violation based on the three-level sentencing enhancement for his role in the conspiracy. Def. Mot. at 6–8. As discussed below, however, these claims are procedurally barred, and Mr. Wilson cannot rely on them here.

### i. *Prosecutorial Misconduct*

The instant § 2255 motion argues, for the first time, that Mr. Wilson was denied a fair trial due to the prosecutor's alleged misconduct.[4] Def. Mot. at 6. It is well established that, "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in *habeas* only if the defendant can first demonstrate [] cause and actual prejudice.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citations and internal quotation marks omitted); *United States v. Hughes*, 514 F.3d 15, 17 (D.C. Cir. 2008) (citing *Massaro v. United States*, 538 U.S. 500, 504 (2003)). To demonstrate cause, a defendant must show that "some objective factor external to the defense impeded counsel's efforts to comply with the . . . procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). For instance, a defendant may show cause by demonstrating that some "factual or legal basis for a claim was not reasonably available to counsel," or that "some interference by officials . . . made compliance impracticable." *Id.* (internal citations and quotation marks omitted).

These principles apply directly to Mr. Wilson's claims concerning the prosecutor's alleged violation of 18 U.S.C. § 201(c) and Federal Rule of Evidence 801(d)(2)(E). In essence, Mr. Wilson contests the fact that he was "tied to the conspiracy in Counts One and Two by the testimony of the [cooperating witnesses] who got favors from the [Assistant United States Attorney]." Mot. for Evidentiary Hearing at 4. Aside from his claim of ineffective assistance of appellate counsel, however, Mr. Wilson offers no causal argument for his failure to raise these claims on direct appeal. Since Mr. Wilson's claim of ineffective assistance of

---

[4] On appeal, Mr. Wilson argued that the District Court erred by refusing to grant discovery as to the reason MPD Officer Donna Leftridge was subject to an MPD internal investigation and by prohibiting cross-examination on that subject and on her social contacts with Mr. Franklin. In the instant motion, Mr. Wilson focuses on alleged prosecutorial misconduct based on the selection and testimony of certain witnesses.

appellate counsel lacks merit, *see infra* at 17–19, he has not established cause for his failure to argue prosecutorial misconduct on direct appeal. *See Murray*, 477 U.S. at 492 ("Attorney error short of ineffective assistance of counsel does not constitute cause for a procedural default even when that default occurs on appeal rather than at trial."). As such, Mr. Wilson's claim of prosecutorial misconduct is procedurally barred.

A court may consider a claim that is procedurally barred only if the defendant can show that the error "'has probably resulted in the conviction of one who is actually innocent.'" *Bousley*, 523 U.S. at 623 (quoting *Murray*, 477 U.S. at 496). In this regard, "'actual innocence' means factual innocence, not mere legal insufficiency." *Id.* The defendant must demonstrate that, "'in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 327–28 (1995)).

Mr. Wilson has not made this showing. In briefing, Mr. Wilson does not argue that he is factually innocent of the narcotics conspiracy, RICO conspiracy, or unlawful use of a communication facility to facilitate drug trafficking. Instead, he attacks procedural aspects of the trial and sentencing, which constitute challenges to the "legal sufficiency" of his convictions. *See, e.g.*, Def. Traverse at 7 ("Had the fact paid witnesse[s] not testified so that they could tie all of the other evidence together, there could not have [been] a guilty verdict on the two main count[s]."); *id.* at 9 ("Movant does not deny talking on the telephone and inquiring about PCP, nor selling ecstasy—but that does not prove nor raise the elements of Counts One and [T]wo in this case [] unless the alleged coconspirators tie[] the ends together . . . ."). Mr. Wilson has not demonstrated "actual innocence," and the Court cannot consider his barred claim of prosecutorial misconduct.

7

### ii. Factual Findings at Sentencing

Mr. Wilson already has appealed his convictions and sentence, and none of his arguments was found to have merit. *See Wilson*, 605 F.3d at 1039 (affirming Mr. Wilson's convictions and sentence *in toto*). In part, the instant § 2255 motion argues matters that were raised and rejected on direct appeal to the D.C. Circuit. "It is well established in the federal circuits that a federal prisoner cannot raise collaterally any issue litigated and adjudicated on a direct appeal from his conviction, absent an intervening change in the law." *United States v. Greene*, 834 F.2d 1067, 1070 (D.C. Cir. 1987) (quoting *Garris v. Lindsay*, 794 F.2d 722, 726 (D.C. Cir. 1986)); *see also Hardy v. United States*, 381 F.2d 941, 943 (D.C. Cir. 1967) ("It has been repeatedly held that issues disposed of on appeal from the original judgment of conviction will not be reviewed again under section 2255.").

Mr. Wilson contends that *Alleyne v. United States*, 133 S. Ct. 2151 (2013), constitutes an intervening change in the law. *See* Def. Traverse at 13–14. In *Alleyne*, the Supreme Court held that factual findings that increase either the statutory maximum or the mandatory minimum must be submitted to the jury and found beyond a reasonable doubt. *Id.* at 2158. Here, the Court did not find any facts that increased the statutory maximum, and the only mandatory minimum applied to Count 1, *i.e.*, narcotics conspiracy. *See* U.S. Opp'n, Ex. D (Presentence Investigation Report) [Dkt. 1227-4]; Am. Judgment at 3–4. A narcotics conspiracy involving at least one kilogram of a mixture or substance containing a detectable amount of PCP and at least fifty grams of cocaine base requires a combined mandatory minimum sentence of twenty years imprisonment. 21 U.S.C. § 841(a)(1); *id.* § 841(b)(1)(A)(iii)–(iv) (2006) (amended 2009). The jury found beyond a reasonable doubt that Mr. Wilson was responsible for at least one kilogram of a mixture or substance containing a detectable amount of PCP and at least fifty

8

grams of cocaine base. *See* Verdict Form at 41–42. The sentencing judge did not increase the applicable mandatory minimum beyond that established by the jury verdict. *See* Presentence Investigation Report at 7. As a result, *Alleyne* is not an intervening change in law relevant to Mr. Wilson's claims.

On appeal, Mr. Wilson challenged the district court's finding that he was responsible for thirty or more kilograms of PCP. *Wilson*, 605 F.3d at 1036–37. The D.C. Circuit started with the proposition that "[d]rugs distributed by a co-conspirator in furtherance of a conspiracy are attributable to a member of the conspiracy so long as the distribution was 'reasonably foreseeable' to that member." *Id.* at 1036 (quoting *United States v. Childress*, 58 F.3d 693, 722 (D.C. Cir. 1995); U.S.S.G. § 1B1.3(a)(1)(B)). Based on the evidence presented at trial, the D.C. Circuit held that "the district court's finding that the M Street Crew distributed more than 30 kilograms of PCP was not clearly erroneous." *Id.* Moreover, the D.C. Circuit specifically affirmed the finding that Mr. Wilson was responsible for thirty or more kilograms of PCP:

> In finding Wilson could reasonably foresee the full extent of the PCP sold by the M Street Crew, the district court referred to Wilson's proximity to the day-to-day activities of the Crew . . . his proximity to Franklin . . . and his role in directing sales . . . . These findings, too, are supported by wiretaps and Abney's testimony, and are not clearly erroneous.

*Id.* at 1037.

Before the Circuit, Mr. Wilson also challenged his three-level sentencing enhancement for having played a management or supervisory role in the conspiracy. *Id.* In evaluating this claim, the D.C. Circuit noted that "'all persons receiving an enhancement under [U.S. Sentencing Guidelines] § 3B1.1 must exercise some control over others.'" *Id.* (quoting *United States v. Graham*, 162 F.3d 1180, 1185 (D.C. Cir. 1998)) (internal alterations omitted).

9

The Circuit held that the evidence at trial supported Mr. Wilson's managerial role in the conspiracy:

> The evidence relied upon by the district court at sentencing demonstrates both that a number of the relevant factors were present in Wilson's case and that the district court considered them in sentencing him. Abney's testimony, for example, indicates that Wilson exercised decision-making authority. . . . Additional evidence relied upon by the district court shows Wilson directly planning or organizing: A wiretapped conversation revealed Wilson "talking of holding a gun to the man suspected of theft of the crew drugs that also shows taking charge in a way that the others did not." . . . The district court further found based on cooperating Crew-member testimony that Wilson had chased a non-Crew member from the street in order "to protect the sales for the organization." . . . And, based on other testimony, the district court found that Wilson was viewed as a leader by Crew members.

*Id.* at 1037–38. The Circuit therefore concluded that (1) trial evidence supported the finding that certain defendants, including Mr. Wilson, could be held responsible for thirty or more kilograms of PCP, and there was no error in making this factual finding at sentencing; and (2) trial evidence supported the finding that Mr. Wilson played a management or supervisory role in the conspiracy, and there was no error in imposing a three-level sentencing enhancement based on this finding. Because all claims related to the district court's findings at sentencing were fully argued and rejected on appeal, Mr. Wilson cannot re-litigate them here.

Further, Mr. Wilson's claims must be rejected to the extent that he argues that facts found at sentencing should have been decided by the jury, subjected to the criminal reasonable-doubt standard, or both. *See* Def. Mot. at 8 (alleging error at sentencing because "Petitioner was not indicted for the PCP drug sentenced upon as to amount, and the jury verdict was a general verdict"). A sentencing judge may find facts by a preponderance of evidence so long as the sentence does not exceed the statutory maximum or increase the mandatory minimum. *See, e.g., Alleyne*, 133 S. Ct. at 2158 (holding that a jury must decide "facts that

increase the ceiling, but also those that increase the floor"); *United States v. Bisong*, 645 F.3d 384, 399 (D.C. Cir. 2011) ("For sentencing, the preponderance of evidence standard applies." (citing *United States v. Long*, 328 F.3d 655, 670 (D.C. Cir. 2003))); *United States v. Settles*, 530 F.3d 920, 923 (D.C. Cir. 2008) (noting that "a sentencing judge may consider uncharged or even acquitted conduct in [sentencing], so long as that conduct has been proved by a preponderance of the evidence and the sentence does not exceed the statutory maximum for the crime of conviction"). The Sentencing Guidelines provided a maximum sentence of life imprisonment and ten years supervised release on Count 1; life imprisonment and five years supervised release on Count 2; and four years imprisonment and three years supervised release on Counts 104 through 106. Presentence Investigation Report at 7–8. Mr. Wilson's actual sentence did not exceed the statutory maximum or raise the mandatory minimum. *See* Am. Judgment at 3–4. He therefore is foreclosed from raising these arguments in his § 2255 motion.

### B. Ineffective Assistance of Trial Counsel

On March 16, 2004, Mr. Clennon appeared as trial counsel on behalf of Mr. Wilson. The Supreme Court has articulated two separate standards for evaluating the effectiveness of trial counsel in a criminal case. Under *United States v. Cronic*, 466 U.S. 648 (1984), courts will presume a *per se* violation of the Sixth Amendment right to counsel only "'if counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing.'" *Bell v. Cone*, 535 U.S. 685, 697 (2002) (quoting *Cronic*, 466 U.S. at 659). Mr. Wilson contends that Mr. Clennon entirely failed to argue that Mr. Wilson was an individual buyer and seller rather than a member of the M Street Crew narcotics conspiracy. Def. Traverse at 9–11. However, this argument is blatantly contradicted by the trial transcript. *See* May 16, 2006 Tr. [Dkt. 1016] at 110 (Mr. Clennon argued that "if any of the government's witnesses [were] to be credited that

11

perhaps Mr. Wilson had the status of being a buyer in a buyer sort of relationship between he and Mr. Franklin"). Therefore, *Cronic* is inapplicable given the efforts Mr. Clennon made in Mr. Wilson's defense.

Courts more commonly evaluate claims of ineffective assistance of counsel under the standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires (1) a showing that counsel's representation fell below an objective standard of reasonableness; and (2) a showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *United States v. Hughes*, 514 F.3d 15, 17 (D.C. Cir. 2008) (quoting *Strickland*, 466 U.S. at 687–88). The burden of proof rests on a defendant to show that his lawyer made errors "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment and that counsel's deficient performance was prejudicial." *United States v. Geraldo*, 271 F.3d 1112, 1116 (D.C. Cir. 2001) (quoting *Strickland*, 466 U.S. at 687). In other words, to prevail on a claim of ineffective assistance of counsel, a defendant must prove both incompetence and prejudice. *See Strickland*, 466 U.S. at 700.

A criminal defendant is guaranteed legal representation at trial. Since it is so easy after the fact to blame the lawyer for the client's conviction, a high standard applies to demonstrate that the lawyer failed to represent his client effectively. A court's evaluation of an attorney's performance should be highly deferential, *i.e.*, there is a strong presumption that an attorney's conduct fell within the wide range of reasonable professional assistance. *United States v. Toms*, 396 F.3d 427, 432 (D.C. Cir. 2005) (quoting *Strickland*, 466 U.S. at 689). The fact that a particular litigation strategy failed does not mean that it had no chance of success or that counsel was ineffective by employing it. "It is all too tempting for a defendant to second-

12

guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689.

Mr. Wilson alleges ineffective assistance of counsel because Mr. Clennon (1) failed to "advocate sentencing correctly" with respect to the amount of drugs attributable to him and the applicable sentencing enhancements, Def. Mot. at 4; *see also* Def. Traverse at 12 ("The sentence and jury finding . . . [was] a general verdict and as such, movant can only be sentenced on the drug and amount that carries less time."); (2) failed to argue prosecutorial misconduct based on 18 U.S.C. § 201(c) and Federal Rule of Evidence 801, Def. Mot. at 4; *see also* Def. Traverse at 6 ("[S]ince [18 U.S.C. § 201(c)] i[s] clear, it should have been obvious to movant[']s trial counsel who said not a word on the testifying alleged coconspirators[.]"); (3) failed to argue that Mr. Wilson was an individual buyer and seller, and not connected to the larger conspiracy, *see* Def. Traverse at 9 ("Movant does not deny talking on the telephone and inquiring about PCP, nor selling ecstasy—but that does not prove nor raise the elements of Counts One and [T]wo in this case[.]"); (4) ineffectively argued his motion for a judgment of acquittal, *see* Def. Mot. at 4; and (5) ineffectively argued his case at sentencing "under the indictment and [*United States v. Booker*, 543 U.S. 220 (2005)]," Def. Mot. at 4. These arguments misperceive the legal standard governing trial and a claim of ineffective assistance of counsel.

"A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Mr. Wilson has made no such showing. First, a sentencing judge is allowed to find facts by a preponderance of the evidence so long as

13

the sentence does not exceed the statutory maximum or increase the mandatory minimum. *See, e.g., Alleyne*, 133 S. Ct. at 2158; *Settles*, 530 F.3d at 923. Mr. Clennon was not ineffective at sentencing for failing to argue an erroneous legal position.

Nor was Mr. Clennon ineffective for failing to argue prosecutorial misconduct under 18 U.S.C. § 201(c). The anti-bribery statute provides that whoever "directly or indirectly, gives, offers, or promises anything of value . . . for or because of the testimony under oath or affirmation given" shall be fined, imprisoned, or both. 18 U.S.C. § 201(c)(2).[5] Mr. Wilson contends that "paying a fact witness," *i.e.*, offering a plea agreement to cooperating witnesses in exchange for their trial testimony, "is in fact a crime, and . . . those witnesses accepting payment in exchange for testimony [committed a] crime" under the statute. Def. Traverse at 2. But the government can grant leniency in exchange for a cooperating witness's truthful testimony. *United States v. Ramsey*, 165 F.3d 980, 991 (D.C. Cir. 1999) ("[W]e hold that 18 U.S.C. § 201(c)(2) does not prohibit the Government from granting leniency in exchange for a witness's truthful testimony."); *see also United States v. Orr*, 136 F. App'x 632, 637 (5th Cir. 2005) (noting that "a favorable plea agreement in exchange for truthful testimony does not violate [18 U.S.C.] § 201"). Mr. Wilson has not alleged that the cooperating witnesses provided false testimony. *See* Def. Traverse at 7 ("Had the fact paid witnesse[s] not testified so that they could tie all of the other evidence together, there could not have [been] a guilty verdict on the two main count[s]."). Mr. Clennon was not ineffective for omitting an argument that lacks merit.

Mr. Wilson also contends that Mr. Clennon was ineffective for failing to argue that certain testimony was inadmissible under Federal Rule of Evidence 801(d). Def. Mot. at 4.

---

[5] Mr. Wilson also cites 18 U.S.C. § 201(c)(3), which includes substantially the same language, but penalizes the individual who "demands, seeks, receives, accepts, or agrees to receive or accept" anything of value in exchange for his or her trial testimony. *See* Def. Mot. at 4.

Under Federal Rule of Evidence 801(d)(2)(E), a statement is not hearsay, and therefore is admissible, if it is "offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy." Mr. Wilson argues that the witness testimony offered at trial was inadmissible, presumably because he denies that the witnesses were, in fact, co-conspirators. *See* Def. Traverse at 8. On June 14, 2005, Mr. Wilson filed a pre-trial motion for severance from his co-defendants. On December 16, 2006, the Court denied Mr. Wilson's motion, finding that it was "plain from the face of the Indictment that a conspiracy charge links all the offenses and defendants . . . and that the majority of the charges against the defendants arise directly from their participation in the same drug distribution scheme." Dec. 16, 2005 Order at 21–22. Whether, based on the Court's Order, a motion to exclude evidence under Federal Rule of Evidence 801(d)(2)(E) would have been worthwhile was for Mr. Clennon to decide within his professional judgment. *See Strickland*, 466 U.S. at 690. Mr. Wilson has not established that Mr. Clennon was objectively unreasonable for failing to make an argument under Federal Rule of Evidence 801(d)(2)(E).

The record contradicts Mr. Wilson's remaining allegations of ineffective assistance of counsel. Mr. Wilson contends that his trial counsel ineffectively argued his motion for a judgment of acquittal. Def. Mot. at 4; Def. Traverse at 10 ("[T]he record is clear that counsel did not point out the insufficient evidence that [Defendant was a coconspirator as] required in this case."). Mr. Wilson also avers that his counsel ineffectively argued that he was an individual buyer or seller, and was not connected to the larger conspiracy. Def. Mot. at 4; Def. Traverse at 10. Federal Rule of Criminal Procedure 29(a) provides that, after the close of evidence, "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." On May 16, 2006, after the close

15

of evidence, Mr. Clennon made an oral motion for a judgment of acquittal on all counts of the Superseding Indictment. *See* May 16, 2006 Minute Entry. Mr. Clennon made the following argument:

> I make the argument that there's no meeting of the minds between Mr. Franklin and Mr. Wilson or between Mr. Wilson and anyone else that shows that he joined or was a member of this conspiracy. I think the evidence at best shows mere association and if any of the government's witnesses are to be credited that perhaps Mr. Wilson had the status of being a buyer in a buyer sort of relationship between he and Mr. Franklin. . . . And that evidence which does tend to indicate he may have had some involvement only indicates that he was on the street selling drugs in a retail fashion.

May 16, 2006 Tr. at 110. Mr. Clennon also argued that there was insufficient evidence to convict Mr. Wilson of the telephone counts, and he adopted the arguments of Mr. Carney, counsel for Defendant Joe Blackson, with respect to the alleged RICO conspiracy. *Id.* at 113–14.

Mr. Wilson might now prefer to have had counsel place a greater emphasis on these arguments, but this does not establish ineffective assistance of counsel. *See Strickland*, 466 U.S. at 690 ("A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."). Mr. Clennon presented and argued the same defense that Mr. Wilson contends was omitted. Mr. Wilson has failed to establish deficient performance from Mr. Clennon.

Finally, even if counsel were defective in some way, Mr. Wilson has not shown a resulting prejudice. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The jury considered and rejected the arguments raised by Mr. Wilson and his co-defendants, and at the close of evidence, Mr. Clennon argued

16

that Mr. Wilson had not been involved in the narcotics conspiracy. It appears that the jury credited the cooperators' testimony to the contrary because it rejected the defenses and unanimously voted to convict. The evidence of the narcotics conspiracy (and, thus, RICO) was overwhelming and there is no basis to conclude that more emphasis by Mr. Clennon on any point would have affected the result. Mr. Wilson has not established ineffective assistance of trial counsel.

### C. Ineffective Assistance of Appellate Counsel

Mr. Wilson avers that he "could not" raise several substantive claims on appeal "due to inept appellate counsel." *See* Def. Mot. at 4–9. Specifically, Mr. Wilson argues that his appellate counsel, Mr. Kiersh, "[f]ailed to raise the unconstitutional jury verdict and sentence enhancement[,] the violations of 18 U.S.C. § 201(c) and [Federal Rule of Evidence 801(d)(2)(E)], [and the] fraud on the jury and insufficient evidence." *Id.* at 5. The Court applies the following standard for ineffective assistance of counsel in the appellate context:

> [Petitioner] must first show that his counsel was objectively unreasonable in failing to find arguable issues to appeal—that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them. If [Petitioner] succeeds in such a showing, he then has the burden of demonstrating prejudice. That is, he must show a reasonable probability that, but for his counsel's [error], he would have prevailed on his appeal.

*Smith v. Robbins*, 528 U.S. 259, 285 (2000) (internal citations omitted).

Contrary to Mr. Wilson's assertions, Mr. Kiersh *did* challenge the Court's jury instructions on Count 2, *i.e.*, RICO conspiracy, as well as the Court's factual findings and three-level sentencing enhancement. *Wilson*, 605 F.3d at 1020 ("[A]ppellants contend that the RICO jury instructions were flawed because the district court failed to instruct the jury that a pattern of racketeering must include an element of continuity."); *id.* at 1036 ("William Robinson, George

Wilson, and Joseph Blackson challenge the district court's calculation of their Guidelines ranges. They contend that the district court incorrectly attributed to each of them the distribution of 30 or more kilograms of PCP."). Mr. Wilson has not identified any specific facts demonstrating that the quality of Mr. Kiersh's argument was deficient or prejudicial. *See United States v. Kleinbart*, 27 F.3d 586, 593 (D.C. Cir. 1994). Thus, Mr. Wilson has not established that Mr. Kiersh ineffectively argued against the jury verdict and sentencing enhancement.

Nor was Mr. Kiersh ineffective for failing to raise a claim of prosecutorial misconduct under 18 U.S.C. § 201. The D.C. Circuit already has considered whether the government is authorized to grant leniency in exchange for a cooperating witness's truthful testimony and has rejected Mr. Wilson's position. *See Ramsey*, 165 F.3d at 991. Mr. Kiersh was not objectively unreasonable for omitting an argument that the D.C. Circuit already has considered and rejected.

Finally, Mr. Wilson has not established that Mr. Kiersh's failure to argue insufficient evidence and a violation of Federal Rule of Evidence 801(d)(2)(E) was beyond his "reasonable professional judgment." *Strickland*, 466 U.S. at 690. On appeal, Mr. Kiersh raised six arguments on behalf of Mr. Wilson: (1) the trial court erred by refusing to grant discovery as to the reason Officer Leftridge was the subject of an MPD investigation and prohibiting cross-examination regarding her alleged social contacts with Defendant Franklin; (2) the government violated *Brady v. Maryland*[6] by failing to disclose the full nature of its investigation into Officer

---

[6] *Brady v. Maryland*, 373 U.S. 83 (1963), requires federal prosecutors to disclose to a criminal defendant all information that is or might be favorable and material either to guilt or punishment. Impeachment evidence must also be disclosed. *Giglio v. United States*, 405 U.S. 150, 154–55 (1972). There are three elements to a *Brady* claim, which implicates Due Process rights under the Fifth Amendment: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the

Leftridge's activities; (3) the Court erred in its jury instructions on Count 2, *i.e.*, RICO Conspiracy; (4) the Court erred in denying Mr. Wilson's motion for severance; (5) the Court erred in denying Mr. Wilson's motion to suppress evidence recovered from his home; and (6) the Court made erroneous factual findings and improperly imposed a three-level sentencing enhancement. *See United States v. Wilson*, 605 F.3d 985 (D.C. Cir. 2010).

Despite this broad-based attack on the trial and sentence, Mr. Wilson argues that Mr. Kiersh also should have raised arguments concerning insufficient evidence and Federal Rule of Evidence 801(d)(2)(E). But counsel is not required to raise every conceivable issue on appeal. Appellate counsel is expected to exercise his or her professional judgment to focus the litigation and raise those claims that are most likely to succeed. *See Jones v. Barnes*, 463 U.S. 745, 751–52 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). The Court finds that Mr. Kiersh was not unreasonable for failing to raise prosecutorial misconduct in the face of adverse circuit law, and insufficient evidence after months of trial with video and audio recordings. The Court will deny Mr. Wilson's claim of ineffective assistance of appellate counsel.

---

[government], either willfully or inadvertently; and prejudice must have ensued." *See Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

## IV. CONCLUSION

For the foregoing reasons, the Court will deny George Wilson's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [Dkt. 1181], and deny his motion for an evidentiary hearing and appointment of counsel [Dkt. 1237]. A memorializing Order accompanies this Opinion.


Date: February 19, 2014                       /s/
                                                          ROSEMARY M. COLLYER
                                                          United States District Judge